DAVID BOWER     SBN 119546
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
dbower@faruqilaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**FILED BY FAX**

REGINA MERINO, individually and on behalf of all others similarly situated,

Case No. CV13 - 9519 RSWL (JCGx)

Plaintiffs,

v.

TARGET CORPORATION, a Minnesota Corporation,

Defendants.

**CLASS ACTION COMPLAINT**
**DEMAND FOR JURY TRIAL**

1. Unlawful Practices (UCL B&P § 17200)
2. Unfair Business Practices (B&P § 17200)
3. Inf. Practices Act (Civil Code § 1798.80 et seq.)
4. Stored Communications Act 18 USC §2702)
5. Invasion of Privacy
6. Negligence
7. Negligence Per Se
8. Bailment
9. Conversion

Plaintiff REGINA MERINO ("Plaintiff") brings this action against TARGET CORPORATION ("Defendant" or "TARGET"), a Minnesota Corporation, on behalf of herself and all others similarly situated. Plaintiff makes the following allegations upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff Regina Merino brings this class action complaint against TARGET for failing to secure and safeguard its customers' personal financial data, including credit and debit card information and PIN numbers.

2. In a recent hearing before a Congressional Subcommittee titled "The Threat of Data Theft to American Consumers," one security expert explained that the problem of data theft can often be attributed to a failure by companies to properly protect their customers' data. The report notes that:

> [O]perators of these systems continue to run outmoded flawed software, fail to follow basic good practices of security and privacy and often have insufficient training or support.  The commonly cited reason for these failings is cost.  The cost of providing better security and privacy protection is viewed as overhead that is not recovered in increased revenue, and it is usually one of the first things trimmed in budget cuts.  Running outdated software and unpatched operating systems exposes citizens to risks and consequences whose cost a company does not bear.  Therefore, a company does not have an immediate economic incentive to make the investment necessary to prevent breaches.

Statement of Professor Eugene H. Spafford, Purdue University, Testimony Before the House Energy and Commerce Subcommittee on Commerce Manufacturing and Trade, May 5, 2011.

3.     Such is the case here.  TARGET's lack of adequate security set the stage for easy access by third-party data thieves.

4.     TARGET violated federal and state law by failing to take commercially reasonable steps to protect Plaintiff's and class members' personal financial information.  TARGET's lack of adequate security granted easy access to third-parties who tampered with in-store point-of-sale machines to steal unwitting customers' debit and credit card information or "track data" and possibly PIN numbers, allowing the thieves to subsequently create counterfeit cards or steal money directly from the victims' bank accounts.  In essence, TARGET's security failure enabled cyber-pickpockets to steal customer financial data from within the retailer's stores and subsequently loot the customers' bank accounts.

5.     On December 19, 2013, it was widely reported that data thieves were able to install software on in-store machines customers use to swipe magnetic strips on their debit or credit cards when paying for merchandise in TARGET stores.[1]

6.     News of the data breach was first reported by Brain Krebs on his internet blog, on December 18, 2013.[2]

7.     TARGET did not make any attempt to warn victims of the data breach until December 19, 2013, when it released a statement confirm TARGET was aware of unauthorized

---

[1] http://www.cbsnews.com/news/TARGET-confirms-massive-credit-debit-card-data-breach/ (last visited December 23, 2013).
[2] http://krebsonsecurity.com/2013/12/sources-TARGET-investigating-data-breach/ (last visited December 23, 2013).

1    access to its payment card data affecting approximately 40 million credit and debit card accounts

2    between November 27, and December 15, 2013.[3]

3       8.    TARGET failed to employ commercially reasonable security measures, like

4    ensuring the physical security of its checkout line terminals and inspecting and testing its payment

5    processing equipment, to protect customers' debit and credit card information during in-store

6    purchases.  TARGET's knowing and willful failure to secure its customers' debit and credit card

7    information led to a security breach that exposed the financial data and bank account balances of

8    customers who shopped at TARGET stores across over the country.

9       9.    On December 20, 2013, almost one month after the data breach, TARGET posted a

10   belated message to victims of the data breach on its website.[4]   The message was signed by

11   TARGET Chief Executive Officer, Gregg Steinhafel.  It began, "As you have likely heard by now,

12   TARGET experienced unauthorized access to payment card data from U.S. TARGET stores." "The

13   message goes on to state "…we want to assure you that the cause of this issue has been addressed

14   and you can shop with confidence at TARGET."  The message then urged customers to protect

15   themselves by vigilantly monitoring their accounts and free credit reports, and provides

16   information on how to contact the Federal Trade Commission and credit reporting agencies in

17   connection with potential fraud stemming from the data breach.[5]

18      10.   TARGET failed to provide timely and clear notification to victims, thereby

19   preventing customers from taking meaningful, proactive steps to secure their financial data and

20   bank accounts.

21      11.   While some security threats are unavoidable, TARGET knowingly and willfully

22   failed to take even the most basic steps to protect its customers' private and financial information,

23   leaving the data entirely available for data thieves to steal.  In failing to provide adequate data

24   security and timely notice of the security breach, Defendant violated federal and California

25   consumer protection statutes.

26   _____

27   [3] http://pressroom.TARGET.com/news/TARGET-confirms-unauthorized-access-to-payment-card-data-in-u-s-stores (last visited December 23, 2013).
[4] https://corporate.TARGET.com/discover/article/Important-Notice-Unauthorized-access-to-payment-ca (last visited December 23, 2013).

28   [5] *Id.*

**PARTIES**

12.     Plaintiff Regina Merino ("Merino") is a resident of Los Angeles County California. Ms. Merino used her TARGET credit card to purchase merchandise and a TARGET retail location in Los Angeles County California, between November 27, 2013 and December 15, 2013.   On December 21, 2013, Ms. Merino discovered that the data breach caused her MasterCard credit card to be compromised resulting in the cancellation and suspension of her card privileges and prohibiting access to her credit line essentially reducing her available credit by over $1,000.00. Her card was declined when she attempted to make a purchase even though there should have been more than sufficient credit line to cover the purchase.  This not only caused embarrassment but also made it impossible for her to use her credit card for holiday purchases as she had planned.  It was discovered that her credit line was compromised solely due to the fact that her credit information was compromised by having used the card at the TARGET store in her neighborhood.

13.     Defendant, TARGET Corporation is a Minnesota Corporation, with its corporate headquarters located at 1000 Nicollet Mall, Minneapolis, Minnesota, 55403.  TARGET is a retail department store with 1,797 stores located throughout the United States.

**JURISDICTION AND VENUE**

14.     The claims asserted herein arise under and pursuant to the Federal Stored Communications Act, 18 U.S.C. § 2702.  This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

15.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, are citizens of states different from the state of the Defendant.

16.     Venue is proper in this Court under 28 U.S.C. § 1391(a) and (b) because a substantial part of the events giving rise to the claims enumerated herein occurred in this judicial district.

**FACTS**

17.     TARGET is one of the nation's largest retailers.  TARGET has approximately 1,797 department store locations in the United States.  Consumers visit TARGET stores to purchase a wide variety of items ranging from food and groceries to cosmetics, clothes, electronics, garden suppliers, auto supplies, and toys.   TARGET is one of the Nation's top holiday shopping destinations.

18.     The period of time ranging from just after Thanksgiving dinner through Christmas is widely recognized as the busiest shopping season of the year.  Indeed this period includes to two busiest shopping days of the year, the Friday immediately following Thanksgiving, also known as "Black Friday," and the Saturday before Christmas.[6]

19.     On December 19, 2013, it was widely reported that data thieves were able to install software on in-store machines customers use to swipe magnetic strips on their debit or credit cards when paying for merchandise in TARGET stores.[7]

20.     News of the data breach was first reported by Brain Krebs on his internet blog, Krebsonsecurity.com, on December 18, 2013.[8]

21.     On December 19, 2013, TARGET released a statement on its website, confirming what was reported by Brain Krebs and various news organization:

> TARGET today confirmed it is aware of unauthorized access to payment card data that may have impacted certain guests making credit and debit card purchases in its U.S. stores. TARGET is working closely with law enforcement and financial institutions, and has identified and resolved the issue.
>
> "TARGET's first priority is preserving the trust of our guests and we have moved swiftly to address this issue, so guests can shop with confidence. We regret any inconvenience this may cause," said Gregg Steinhafel, chairman, president and chief executive officer, TARGET. "We take this matter very seriously and are working with law enforcement to bring those responsible to justice."

---

[6] http://www.nrf.com/modules.php?name=Pages&sp_id=1140 (last visited December 23, 2013).
[7] http://www.cbsnews.com/news/TARGET-confirms-massive-credit-debit-card-data-breach/ (last visited December 23, 2013).
[8] http://krebsonsecurity.com/2013/12/sources-TARGET-investigating-data-breach/ (last visited December 23, 2013).

Approximately 40 million credit and debit card accounts may have been impacted between Nov. 27 and Dec. 15, 2013. TARGET alerted authorities and financial institutions immediately after it was made aware of the unauthorized access, and is putting all appropriate resources behind these efforts. Among other actions, TARGET is partnering with a leading third-party forensics firm to conduct a thorough investigation of the incident.

http://pressroom.TARGET.com/news/TARGET-confirms-unauthorized-access-to-payment-card-data-in-u-s-stores

22.     On December 20, 2013, almost one month after the data breach, TARGET posted a belated message to victims of the data breach on its website.[9]   The message was signed by TARGET Chief Executive Officer, Gregg Steinhafel.  It began, "As you have likely heard by now, TARGET experienced unauthorized access to payment card data from U.S. TARGET stores." "The message goes on to state "…we want to assure you that the cause of this issue has been addressed and you can shop with confidence at TARGET."  The message then urged customers to protect themselves by vigilantly monitoring their accounts and free credit reports, and provides information on how to contact the Federal Trade Commission and credit reporting agencies in connection with potential fraud stemming from the data breach.[10]

## CLASS ACTION ALLEGATIONS

23.     Plaintiffs seek to represent a class defined as:

All persons residing in the United States who made an in-store purchase at a TARGET store in the United States using a debit or credit card any time from November 27, 2013 to December 15, 2103 (the "Class").

Excluded from the Class are Defendant's affiliates, parents, subsidiaries, employees, officers, agents, and directors.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

24.     Members of the Class are so numerous that their individual joinder herein is impracticable.   According to TARGET, personal and financial information was stolen from

---

[9] https://corporate.TARGET.com/discover/article/Important-Notice-Unauthorized-access-to-payment-ca (last visited December 23, 2013).
[10] *Id.*

approximately forty (40) million credit and debit card accounts. Class members may be notified of the pendency of this action by mail, email and/or publication.

25.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.   These common legal and factual questions include, but are not limited to:

a.   Whether Defendants failed to use reasonable care and utilize commercially reasonable methods to secure and safeguard its users' sensitive personal and financial data;

b.   Whether Defendants' conduct violates Cal. Bus. & Prof. Code § 17200, *et seq*.;

c.   Whether Defendants' conduct violates the Stored Communications Act, 18 U.S.C. §2702;

d.   Whether Defendants' conduct violates Cal. Civ. Code §1798.80 *et seq.*;

e.   Whether Defendant's conduct constituted Intrusion;

f.   Whether Defendant's conduct constituted Public Disclosure of Private Facts;

g.   Whether Defendant's conduct constitutes Misappropriation of Likeness and Identity;

h.   Whether Defendant's conduct violated Class members' Caifornia Constitutional Right to Privacy;

i.   Whether Defendants unreasonably delayed in informing customers of the security breach and taking steps to remedy the loss of service and impact of the breach;

j.   Whether Defendants' conduct constitutes negligence;

k.   Whether Defendants' conduct constitutes negligence per se;

l.   Whether Defendant's conduction constituted Bailment; and

m.  Whether Defendant's conduct constituted Conversion.

26.     Plaintiff's claims are typical of the claims of the proposed Class.   Each Class member was subjected to the same illegal conduct, was harmed in the same way and has claims for relief under the same legal theories.

27.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

28.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**Unlawful Business Practices In Violation Of California's Unfair Competition Law ("UCL"),**
**Business & Professions Code § 17200 *et seq*.**
**(Unlawful Practices)**

29.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

30.     COUNT I is brought against TARGET by Plaintiff individually, and on behalf of the Class.

31.     The actions and omissions of TARGET violated a number of California consumer statutes, and as a result, TARGET has also violated the "unlawful practices" prong of the UCL.

32.     Defendant TARGET violated the California Const., Art. 1, Section I, by failing to exercise reasonable care to prevent unauthorized access of customers' private personal and financial data.  Defendant TARGET had a fiduciary relationship with Plaintiffs and the Class as Plaintiffs and Class members have entrusted TARGET with private personal data as well as financial data such as credit card account numbers.  Due to the fiduciary relationship, TARGET had a duty to exercise reasonable care in protecting such personal data, and a duty to inform Plaintiffs and Class members immediately should that data security be compromised.  Defendant TARGET has violated these duties in violation of Plaintiffs' rights to privacy pursuant to the California Constitution.

33.     Defendant TARGET violated California's Financial Information Privacy Act, Cal. Fin. Code § 4050 *et seq.* by unlawfully breaching their duty to protect Plaintiffs and Class members nonpublic personal information from disclosure to nonaffiliated third parties. *See* Cal. Fin. Code § 4052.  Defendant TARGET is also liable for negligently disclosing personal information under Cal. Fin. Code § 4057.

34.     Defendant TARGET violated California's Information Practices Act of 1977 by failing to meet their duty to implement and maintain reasonable security procedures and practices to protect the credit card information of customers from unauthorized access, use, or disclosure. Defendant TARGET also violated their duty to timely disclose the breach of security to Plaintiffs and Class members, as TARGET was aware that personal information was or was reasonably believed to have been acquired by unauthorized persons.

35.     Plaintiffs and Class members have suffered injury in fact and lost money or property as a result of these violations of the unlawful prong of the UCL.

36.     Pursuant to Bus. & Prof. Code § 17203, Plaintiffs seek an order of this Court permanently enjoining TARGET from continuing to engage in its unfair and unlawful conduct as alleged herein.  Plaintiffs also seek an order requiring TARGET to:

    (a)    immediately cease the conduct described herein;

    (b)    make full restitution of all monies wrongfully obtained;

    (c)    disgorge all ill-gotten revenues and/or profits; and

(d)      pay attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

## COUNT II

**Unfair Business Practices In Violation Of California's Unfair Competition Law,
Business and Professions Code § 17200 *et seq*.
(Unfair Practices)**

37.      Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

38.      COUNT II is brought against TARGET by Plaintiffs individually, and on behalf of the Class.

39.      The conduct of TARGET, described herein, violated the unfair prong of the UCL because such conduct violated various laws and policies recognized by the California Legislature and the California courts, including without limitation, the CLRA, because the utility of the conduct of TARGET is significantly outweighed by the gravity of the harms it imposed on consumers, and because the business practices of TARGET described herein are oppressive, unscrupulous or substantially injurious to consumers.

40.      Defendant TARGET knowingly failed to provide such adequate safeguards Plaintiffs' and Class Members' personal and financial information.

41.      Plaintiffs and members of the Class have suffered injury in fact and lost money or property as a result of these violations of the unfair practices prong of the UCL.

42.      Pursuant to Bus. & Prof. Code § 17203, Plaintiffs seek an order of this Court permanently enjoining TARGET from continuing to engage in their unfair and unlawful conduct as alleged herein.  Plaintiffs also seek an order requiring TARGET to:

(a)      immediately cease the conduct described herein;

(b)      make full restitution of all monies wrongfully obtained;

(c)      disgorge all ill-gotten revenues and/or profits; and

(d)      pay attorneys' fees and costs pursuant to, inter alia, C.C.P. § 1021.5.

## COUNT III
**Violation Of California's Information Practices Act of 1977,
Cal. Civ. Code § 1798.80 *et seq*.**

43.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

44.     COUNT III is brought against TARGET by Plaintiff individually, and on behalf of the Class.

45.     Defendant TARGET violated Cal. Civ. Code § 1798.81 by failing to meet their duty to implement and maintain reasonable security procedures and practices to protect the credit card information of customers from unauthorized access, use, or disclosure.

46.     Defendant TARGET also violated Cal. Civ. Code § 1798.82, shirking their duty to timely disclose the breach of security to Plaintiffs and Class members, as TARGET was aware that personal and financial information was or was reasonably believed to have been acquired by unauthorized persons and did nothing to inform customers in a timely manner.

47.     Upon information and belief, Plaintiffs and members of the Class were not notified of the November 27 – December 15, 2013 security breach until December 19, 2013, after bloggers and news organizations reported the breach.

48.     Upon information and belief, no law enforcement agencies instructed TARGET that information related to the breach should be kept from the public, or that notifying TARGET customers would impede or delay the criminal investigation.

49.     Plaintiffs and members of the Class have suffered injury and in fact will continue to incur damages as a result of these violations.  Damages include but are not limited to loss of money and property, invasion of privacy, loss of control over personal and financial data including credit card data, loss of funds and time related to the future monitoring of credit reports as a result of potential fraud this breach may bring, injury to credit, and fear of future fraud and/or identity theft. The amount of damages suffered by Plaintiff and members of the Class exceed the minimum jurisdiction of this court.

**COUNT IV**
**Violation of the Federal Stored Communications Act, 18 U.S.C. § 2702**

50.     Plaintiff realleage all prior paragraphs as if set out here in full.

51.     COUNT IV is brought against TARGET by Plaintiff individually, and on behalf of the Class.

52.     The Stored Communications Act ("SCA") contains provisions that provide consumers with redress if a company mishandles their electronically stored information.  The SCA was designed, in relevant part, "to protect individuals' privacy interests in personal and proprietary information." S.Rep. No. 99-541, at 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, at 3557.

53.     Section 2702(a)(1) of the SCA provides "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service."  18 U.S.C. § 2702(a)(1).

54.     The SCA defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id*. at § 2510(15).

55.     Through its payment processing equipment, Defendant TARGET provides an "electronic communication service to the public" within the meaning of the SCA because it provides consumers at large with credit and debit card payment processing capability that enables consumers to send or receive wire or electronic communications concerning their account data to transaction managers, card companies or banks.

56.     By failing to take commercially reasonable steps to safeguard sensitive consumer financial data, TARGET has knowingly divulged customer credit and debit card account information that were communicated to financial institutions solely for the customer's payment verification purposes, while in electronic storage in TARGET's point-of-sale payment machines.

57.     Section 2702(a)(2)(A) of the SCA provides "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service."  18 U.S.C. § 2702(a)(2)(A)

58.   The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communications system."  18 U.S.C. § 2711(2).

59.   An "electronic communications system" is defined by the SCA as "any wire, radio, electromagnetic, photo-optical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. § 2510(14).

60.   TARGET provides remote computing services to the public by virtue of its computer processing services for consumer credit and debit card payments, which are used by customers and carried out by means of an electronic communications system, namely the use of wire, electromagnetic, photo-optical or photoelectric facilities for the transmission of wire or electronic communications received from, and on behalf of, the customer concerning customer financial information for the electronic storage of such communications during the payment verification process.

61.   By failing to take commercially reasonable steps to safeguard sensitive consumer financial data, TARGET has knowingly divulged customer credit and debit card account information that was carried and maintained on TARGET's remote computing service solely for the customer's payment verification purposes.

62.   As a result of Defendant's conduct described herein and its violations of § 2702(a)(1) and (2)(A), Plaintiff and Class members have suffered injuries, including lost money and the costs associated with the need for vigilant credit monitoring and/or identity theft protection services to protect against additional identity theft.  Plaintiffs, on their own behalves and on behalf of the Class, seeks an order awarding themselves and the Class the maximum statutory damages available under 18 U.S.C.§ 2707 in addition to the cost for 3 years of credit monitoring and identity theft protection services.

## COUNT V

## Invasion of Privacy

63.   Plaintiff realleges all prior paragraphs as if set out here in full.

64.     COUNT V is brought against TARGET by Plaintiff individually, and on behalf of the Class.

65.     Plaintiff and members of the Class had a reasonable expectation of privacy in the personal and financial information TARGET failed to protect.

66.     By failing to take commercially reasonable steps to safeguard sensitive consumer financial data, and thus exposing that information to unauthorized parties for unauthorized use, Defendants invaded Plaintiff's and Class Members' privacy by:

    a.   Intruding into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person;

    b.   publicizing private facts about Plaintiff and Class Members, which is highly offensive to a reasonable person;

    c.   using and appropriating Plaintiff's identity without Plaintiff's and Class Members' consent; and

    d.   violating Plaintiff's and Class Members' right to privacy under California Constitution, Article 1, Section 1, through the improper use of Plaintiffs' and Class Members' personal and financial information properly obtained for a specific purpose for another purpose, or the disclosure to some third party.

67.     TARGET knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's positions would consider TARGETs' actions highly offensive.

68.     TARGET invaded Plaintiff's and Class Members' right to privacy and intruded into their private affairs by misusing and/or disclosing Plaintiff's and Class Members' personal and financial information without her informed, voluntary, affirmative and clear consent.

69.     As approximated result of TARGET's conduct, Plaintiff's and Class Members' reasonable expectations of privacy in their personal and financial information was unduly frustrated and thwarted.  TARGET's conduct constituted a serious invasion of Plaintiffs' and Class Members' protected privacy interests.

70.     In failing to protect Plaintiff's and Class Members personal and financial information, TARGET has acted with malice and oppression in conscious disregard of Plaintiff's

and the Class Members' rights to have their information kept confidential and private.  Plaintiff seeks an award of punitive damages on behalf of the Class.

## COUNT VI

### Negligence

71.    Plaintiff reallege all prior paragraphs as if set out here in full.

72.    COUNT VI is brought against TARGET by Plaintiff individually, and on behalf of the Class.

73.    By agreeing to accept Plaintiff's and Class members' non-public financial information through its payment processing services, TARGET assumed a fiduciary duty, which required it to exercise reasonable care to secure and safeguard that information and to utilize commercially reasonable methods to do so.

74.    TARGET breached their duty of care by failing to provide adequate security, and failing to protect Plaintiff's and Class members' financial data from being captured, accessed, disseminated and misused by a third party.

75.    TARGET also breached its duty of care by failing to provide prompt and clear notification to Plaintiff and members of the Class that their financial data had been compromised.

76.    As a direct and proximate result of TARGET's failure to exercise reasonable care and use commercially reasonable security measures, TARGET made Plaintiff and other Class members into TARGETs for identity theft, and Plaintiff's and the Class' financial information and bank account monies were, in fact, stolen.

77.    As a direct and proximate result of TARGET's misconduct described herein, Plaintiff and Class members were injured because they suffered theft of money and sensitive financial information, and they incurred the additional costs associated with increased risk of identity theft, all of which have ascertainable value to be proven at trial.

78.    Plaintiff and members of the Class have suffered injury in fact, including money damages, and will continue to incur damages as a result such negligence.

## COUNT VII

**Negligence Per Se**

79.    Plaintiff realleges all prior paragraphs as if set out here in full.

80.    COUNT VII is brought against TARGET by Plaintiff individually, and on behalf of the Class.

81.    TARGET's violations of the Stored Communications Act, 18 U.S.C. § 2702 and 815 ILCS 505/1, *et seq.*, resulted in injury to Plaintiff and the Class.

82.    The harm TARGET caused to Plaintiff and the Class resulted from the type of occurrences those statutes were designed to prevent.

83.    Plaintiff and the Class are the type of persons for whose protection those statutes were adopted.

84.    TARGET 's violations of the foregoing statutes as described herein resulted in injury to Plaintiffs and Class members.   Plaintiff and the Class members suffered theft of money and sensitive financial information, and they incurred the additional costs associated with increased risk of identity theft, all of which have ascertainable value to be proven at trial.

**COUNT VIII**

**Bailment**

85.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

86.    COUNT VIII is brought against TARGET by Plaintiffs individually, and on behalf of the Class.

87.    Plaintiffs and Class members delivered and entrusted their personal and financial information to TARGET solely for customers' payment verification purposes.

88.    During the time of bailment, TARGET owed Plaintiffs and members of the Class a duty to safeguard this information and maintain reasonable security procedures and practices. TARGET breached this duty.

89.    As a result of TARGET's breaches of duty, Plaintiff and members of the Class have suffered harm.

90.    Plaintiff seeks actual damages on behalf of the Class.

**COUNT IX**

**Conversion**

91.     Plaintiff hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

92.     COUNT IX is brought against TARGET by Plaintiff individually, and on behalf of the Class.

93.     Plaintiff and members of the Class were owners and possessors of their personal and financial information.  As a result of TARGET's wrongful conduct, TARGET has interfered with Plaintiff's and Class members' rights to possess and control their personal and financial information, to which they had a superior right of possession and control at the time of conversion.

94.     Plaintiff and the Class members did not consent to Defendants' mishandling and loss of their personal and financial information.

95.     As a direct and proximate result of TARGET's conduct, Plaintiff and the members of the Class suffered injury, damage, loss or harm and thus seek compensatory damages.

96.     In converting Plaintiff's and Class Members' personal and financial information, TARGET has acted with malice, oppression and in conscious disregard of the Plaintiff's and Class Members' rights.  Plaintiffs therefore, see an award of punitive damages on behalf of the Class.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and members of the proposed Class pray:

(a) for all forms of relief set forth above,

(b) for an order certifying the proposed Class and appointing Plaintiffs and their undersigned counsel of record to represent the proposed Class,

(c) for restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct,

(d) for actual damages,

(e) for compensatory damages,

(f) for statutory damages,

1     (g) for an order requiring Defendant to immediately cease its wrongful conduct; ordering

2  Defendant to pay for credit card fraud monitoring services for Plaintiffs and members of the Class,

3     (h) for punitive damages,

4     (i) for costs of suit herein,

5     (j) for both pre- and post-judgment interest on any amounts awarded,

6     (k) for payment of reasonable attorney's fees, and

7     (l) for such other and further relief as the Court may deem proper.

8                   **DEMAND FOR JURY TRIAL**

9     Plaintiffs demand a trial by jury.

10  Dated: December 27, 2013         **FARUQI & FARUQI, LLP**

11

12                       By:

13                       DAVID BOWER

14                       10866 Wilshire Boulevard, Suite 1470
                          Los Angeles, CA 90024

15                       Telephone: (424) 256-2884
                          Facsimile: (424) 256-2885

16                       dbower@faruqilaw.com

17                       *Attorneys for Plaintiff*

18

19

20

21

22

23

24

25

26

27

28